Mr. Olson? I think you can raise that if you choose to. May it please the Court? Counsel? I am Doug Olson. I'm an attorney with the Federal Defender's Office here in Minnesota. I represent appellate Gene Schave in this appeal from his conviction. I'm going to focus primarily on the search warrant issue in this case. And if I have enough time, I'll talk about the other crimes evidence issue as well. In deciding the search warrant question in this case, which is a question concerning the probable cause to search the entirety of a multi-dwelling occupancy, and whether the officers followed the multiple occupancy rule, there's really four questions and four components for this Court to take into mind to make a determination. Number one, this is a four corners question. This was decided on the four corners of the affidavit submitted in terms of the search warrant. Simply by looking at that, you can determine that the search warrant was overly broad and there was not probable cause in the warrant to search Mr. Schave's bedroom and his computers, which resulted in the discovery of the evidence in this case. So it's a four corners question, simply. Number two, the rental room multi-dwelling occupancy nature of this building was known by the officer and it's set forth in the search warrant affidavit itself. So this is not one of those cases where officers stumbled in believing it was a single family occupancy house and found something different or go into one apartment building and find it subdivided. This was known and it's right there in the search warrant, black and white, that he knew that this is a rental type property advertising rooms for rent. So there's no mistake here. We're under that area of law, under multi-dwelling occupancy. Number three, the probable cause in the search warrant was for Paul Sutton, another occupant of the house. There was no probable cause for the search of Gene Schave's bedroom, his room, his rented room, or his devices. The probable cause was set forth... Here, wait a minute. Clearly there was probable cause that somebody was, somebody in that multi-occupant dwelling was accessing child porn, right? Yes, Paul Sutton. Okay. Well, I think only Paul Sutton because he was the person who was on the account, right? On the Wi-Fi account. So, but didn't the affidavit within the four corners also plead that it's common for people in a multi-occupancy dwelling to share a single account? In a conclusory statement, the officers did state forth that that's a proposition that's common. The deficiency in that statement, number one, it's questionable, but let's just go with it as a general rule that that happens on occasion. We don't know the basis for that, but that's what the officer pleaded. But as to this specific rental-type occupancy, the question is what's going on at this address, not what generally might go on in other places. And because the officer knew that this was a rental-type property, the officer was obligated under our law to do further investigation to determine where the probable cause existed inside the residence. All right. Give the case law for this obligation before you seek a warrant. Yeah, well, the Dorsey case talks about the...actually, the Dorsey case and the Gill case talk about the officer's obligation to do further investigation when confronted with a multi-dwelling occupancy situation. For instance, we see this in apartment buildings all the time. We can't just go and search an entire apartment building when you know it's divided into complex units. They're different, though. They each have separate entrances, separate identifications, separate Wi-Fi access, that kind of thing, right? Well, if you look at the cases cited, particularly in the Dorsey decision, which has been outstanding for quite a few years, it lists the boarding room cases as well, in which the question is posed to cases where there's a boarding room, which is exactly what we're dealing with here. And so the distinction here isn't apartment building versus some house. This isn't a single-family residency house. We know that. At the moment that you know that this is a boarding rental room property... There's a difference between a dormitory and an apartment building. Well, this... Think of a military barracks. You've got multiple people with multiple devices. You may only have probable cause that someone in there is doing something. Why can't a magistrate conclude, depending on the probable cause, showing that a warrant general to the premises is appropriate? Because now we're into the generalized warrant problem, in which particularity and nexus is required. And now what we have here is this boarding rental room property in which each individual owner of a rental room has a property right, and a reasonable expectation of privacy, that just because something else is going on, that they still maintain an expectation of privacy. So the question is the question of reasonableness. But once it's pointed out to that officer that this is a rental-type situation, that requires additional investigation to make a determination of what's going on in the household. No investigation in this case. Have you got a case since 1980 in which we've followed that, applied that rule? No, but it's never been... That's the rule. I've had multiple occupancy cases. I don't think involving a boarding house or a rental room that's been discussed in the Eighth Circuit. Well, we've certainly had apartment buildings. And when you've got unit numbers and so forth that are known, it's a different issue. But boarding houses and B&Bs and fraternity houses, they're all different kinds of multiple occupancy dwellings. And each one of them, Fourth Amendment's always fact-specific. There are no general rules that apply to all of them. Yeah, well, in a situation involving a boarding rental house, once it's known to the officer, like I said, this isn't a question where it wasn't known to the officer. The officer knew it, had an obligation to do further investigation. Otherwise, you're just left with a general warrant, which is what happened in this case. A general warrant based on some suspicion about one person being involved in some cyber tips. Paul Sutton. And there's speculation about Internet sharing. That's fine and dandy, but the question is, what's going on inside this house? And at this point in time, as to Gene Shave, the search of his room and the search of his devices, that's pure speculation and not probable cause. To the extent the officer did any investigation, it is contrary to probable cause. Because what we do know is that the officer called his probation officer, Gene Shave, and discovered that Mr. Shave had a monitored phone. Well, that's obviously not using this access device. And then she was told that he didn't have any computers. So to the extent any investigation was done in this case, it discounts the finding of probable cause as to Mr. Shave. And that's all that's contained in this four corners of the affidavit. Didn't the affidavit identify that cyber tips had identified four IP addresses there? Yeah, multiple IP addresses, all going back to Mr. Sutton as a subscriber. The IP addresses are assigned by the Internet, which I think at Comcast, they're assigned by the Internet person. And since they're all going back to Sutton, I would indicate he's the person and the suspect here. It doesn't mean that there's multiple people accessing the device. That would be an incorrect conclusion. The IP address doesn't go to the device, it goes to the... ...the house. And so the providers often change those. That's something that comes out of Comcast with the provider to the house. It doesn't come from the user. So that doesn't get anywhere. I'm running out of time, so I'm just going to save at least, I've got 43 seconds or whatever. And if I'm able to, I'll talk about... I have a question on the evidentiary issues. Are you arguing 404B at all, or is this what's on appeal all about the relationship between 414 and 403? I'm confused about that. It's really about what's the relationship between 414 and 403B. It really is, and the brief, I guess, on both sides kind of deviates in parts. But if you give me just a second. So what I'm arguing there is that the probation officer's testimony, let's focus on that. Pages 38-104 of the transcript of this testimony, three probation officers talked about multiple acts of child molestation. They talked about masturbation practices, and they talked about Mr. Shave being deceptive, dishonest, and manipulative. If you read that portion of the transcript, that's it. That's the prejudice. That's the 414, 413 prejudice that has to be balanced under 403, and that's it in a nutshell. So if you look at that... Thank you. That's helpful. If you look at that, that's about the worst evidence I've ever seen, and I tried the case. Ms. Polachek? Thank you, Your Honor. May it please the Court, Emily Polachek on behalf of the United States, we are here to ask this Court to affirm the conviction against Mr. Shave. I will take the points that Mr. Olson brought up in order. The first thing that he mentioned was that this is a four corners question, and the government would note that it cited in its brief two different standards that this Court has used when reviewing the motions, denials of motions to suppress. And the government's briefing could have been clearer on this issue. The government first cited two cases that talked about containing the analysis to the four corners of the affidavit. Those two cases, Roberts and Etheridge, dealt with instances when a defendant pleaded guilty, and the appeal was before the Court due to a conditional guilty plea. Later in the brief, we cited on page 35 and 36, LaGrange and Skarda, which talk about the fact that this Court can affirm a denial of a motion to suppress on any evidence that is supported in the record, including the trial record. And that is a better standard to apply here because that matches the procedural posture of what happened in this case, which is that the case actually did go to trial, and we have the trial record before us. It's the government's position that the Court could affirm by simply looking at the four corners of the affidavit, but the Court is free to look at the entirety of the record when doing so. Counsel, it does seem to me that, well, certainly one key to this case is just looking at what facts were in that affidavit. And one that hasn't been discussed yet, I don't believe, is that the Court was informed that there was not one but two sex offenders at that address. That's correct. Isn't that kind of important here? Yes, Your Honor. I mean, I think that the important thing to note is that child porn cases are a little bit different from other cases when we're going into a property, because in that instance, we have an IP address that comes back to a specific property. And in this case, the property was the home. There was no unit number. As this Court has noted, there's one entrance, there's one address. This isn't a multi-unit property with different units. But they are looking then for the electronic devices associated with the transmissions of child pornography. It happened to be that the IP subscriber was one of two sex offenders that lived in that house. The fact that there were two different men who both lived in that house and had prior convictions involving sexual crimes against children advanced the probability that there would be contraband evidence found on the electronic devices in that home. The nexus here needed to be between those electronic devices and the transmissions that the National Center for Missing and Exploited Children became aware of. However, there is also a nexus between those transmissions and Mr. Shave. And that nexus comes from the fact that Mr. Shave lived in that home and that his prior conviction was for the exact same offense that was being investigated here. This wasn't like Mr. Sutton who had a hands-on offense. Mr. Shave had a prior conviction for possession of child pornography. And unlike Mr. Sutton, Mr. Shave had been designated by the Minnesota Department of Corrections as a Level III sex offender, meaning that he represented the highest risk of re-offense. Counsel, what concerns me about this case is one of the evidentiary issues, and specifically the quantity and cumulative nature of the 414 evidence. Could you address for me why that was not an abuse of discretion to allow in so much evidence in such detail and in such cumulative nature? Your Honor, I think that if we look at specifically what was 414 evidence in this instance, evidence of prior instances of child molestation, we're talking about 15 pages out of a 600-page transcript. Those pages are cited in our brief. And the evidence was not cumulative because the evidence came in in a couple different ways. First of all, Agent Moran testified about some of the facts underlying the 2010 conviction. She then talked about several instances in which the defendant admitted to hands-on abuse of children under the age of 14. Agent Maurer talked about different instances and admissions that the defendant made about that abuse. And then Agent Chevalier-Jones simply verified that she knew that there had been admissions made. She did not testify about any details regarding those admissions. The evidence that was admitted, if we compare this to some other cases, particularly the cases cited in the briefs in this case, this evidence came in through probation officers. It was presented very clinically, and it was presented from admissions that the defendant himself made. This isn't like other 414 cases when the court is examining whether or not it was okay for a prior victim to come in and testify. That kind of testimony is arguably quite a bit more emotional and perhaps more inflammatory as the victim, him or herself, is up there talking about what that defendant did to them. In one case, as many as 20 years prior, and yet this court has affirmed instances of that information being admitted. I think it's clearly probative. The question is, how much is too much? I think that in this case, the court gave a very thorough and searching analysis of what would be appropriate to admit. There was evidence that the government sought to admit that Judge Hosford excluded and said would tip the scales, and so that was kept out. The district court was very thoughtful about what would and would not come in. He did call this a close case, but it was the government's position that in close cases, that is the apex of when this court should be at its most deferential to the discretion and expertise of the trial court. Did the court give a limiting instruction? The court gave the limiting instruction at the beginning before any of the testimony came in, and specifically told the jury that they could not convict Mr. Shave based on his prior acts. The court then reminded the jury of that instruction twice more when the other agents testified, and then gave a final instruction before deliberations, once again, the full instruction instructing them that they could not convict him based on these other instances. I would like to then briefly touch back on the search warrant issue and just this idea that, as I mentioned, this is a building that has one entrance and one address. This is a home that is shared by housemates, in essence. So we have these men who are sharing one home and using, as was verified, one internet account. This is pretty common, and the court can use its common sense when… I wonder if there should be some sort of limiting principle. Let's take maybe Judge Loken's example of an army barracks where there's 100 recruits all under one roof, and you get information that there's an IP address that's there. Would a warrant allow search of every single device that these 100 recruits have? I think, you know, these are going to be incredibly fact-specific scenarios. I think when we have one address and one entrance, I think that in that instance, the entire structure is open to a search. If the officers… The whole structure. Well, if the officers were to go in and discover there's different wings or some aspect by which they can separate out the property into units that could, you know… How about another example? It's actually more similar to this one. You have a multi-unit house, but maybe with a common entrance. Can you search every room, just as a general proposition? I think, again, we need to look at the IP address, and where is the IP address coming back to? Is this entire house or this entire structure using the same Internet access? And then I think that we get into a situation like this where we're looking then at which devices within that home might have been the devices used for the transmissions. The Gill case is an interesting one that the defense cites, because in that case, it was a home that had just an address that was 2922, but then there was also a 2922A. And what they were looking for was in 2922A, but the warrant just said for 2922. In that instance, though, what the court looked at was the fact that the affidavit contained sufficient information to show that both of these units, though they were in one building, there was probable cause to believe that the drugs in that case could have been coming from either unit. And I think that's what distinguishes this case, is that if we look at the affidavit, there is sufficient information to search the entirety of that home to believe that child pornography users are keeping their devices in their bedrooms, that that's where the police need to search to find those devices that were making those transmissions. Sounds like Gill was a multiple entrance situation. Yes, Your Honor. It was a multiple entrance situation. If the warrant mentions one and they enter the other, the warrant doesn't protect it. There was a separate issue. Execution issues at some point. I don't know how you split up. Exactly, Your Honor. Gill had an execution issue in it as well, and the court found good faith and upheld on that basis with respect to execution. So we would ask that this court affirm the conviction. Thank you. Thank you. Mr. Olson, I think I used up a little bit of rebuttal time you had with a question about the 414. I'll give you a minute if you'd like. Well, I take the minute and I appreciate that. Well, the Fourth Amendment question here presented, and in a lot of these warrants it is fact specific, but the distinction factor and distinguishing it from the Gill situation a little bit is this multiply. Is that the officer knew ahead of time that this is a boarding house rental property, and at that point in time, everybody in that place has got their own expectation of privacy. That isn't diminished simply because of this potential Internet sharing for which there's no evidence that that is going on within this occupancy. If that's the rule, then any place that's got an Internet wireless into it with multiple rooms, that means you can search everything. That can't be. It can't be in the Army barracks that you've got one ISP that we've discovered someone's uploading, downloading child pornography that you can search 100 people's Internet devices. It can't be the rule. And so we find out in here, this is a discrete limitation on the rule, is that once you find out that you've got multiple resident occupancies, boarding room or whatever, the officers got to do an additional investigation. It's got to be in the warrants, and we can limit so we're not violating other people's rights. Mr. Shave isn't identified as having used the Internet or even having devices in that house. So he should have been, his privacy, expectations of privacy as to his room and his devices should have been protected, and the search was overly broad in violation of the Fourth Amendment. Thank you. Thank you. Interesting fact situation, and seems like every Fourth Amendment case is. It's been well-briefed and arguments been helpful, and we'll take it under advisement.